It is United States v. Lawless 20-1173. Counsel for appellant, please make your appearance. May it please the court, I'm Josh Lee and I represent David Lawless. We've raised a lot of procedural challenges in this case, but this morning what I really wanted to do is get to what I think is the heart of the matter, which is I think the substantive unreasonableness of Mr. Lawless's sentence. And I want to be clear about something from the outset, and that's that we aren't here just because the district court imposed an upward variance. Now, it's true that in the district court we asked for the guideline sentence of five years. But if the district court had imposed an upward variance of six years or even eight years, we wouldn't be here. The reason that we are here is that the district court more than doubled the guideline sentence, going from the 60-month guideline sentence all the way up to 144 months. And what makes Mr. Lawless's sentence substantively unreasonable is not the fact that there was an upward variance, but the dramatic extent of that variance. And the extent of the variance was an abuse of discretion in light of all the 3553A factors. Now, a key reason that this upward variance to this extent was unreasonable was that there were truly compelling mitigating circumstances in this case. And I think that the government's brief actually puts it the best when it comes to one of those, which is that when Mr. Lawless committed these offenses, he was not himself. It's undisputed that at the time of the offense, Mr. Lawless was suffering from a mixed bipolar state, which is the excruciating condition of being both suicidally depressed and manic at the same time. It's also undisputed that this condition was induced by contraindicated medications that were prescribed to him by his psychiatrist. What Mr. Lawless needed were mood-stabilizing medications, and what he got actually made his problem worse. Now, that in and of itself might be a pretty good case in mitigation, but we all know that mental health evidence sometimes has a double-edged sword to it. What really puts this case over the top is the evidence of rehabilitation, that Mr. Lawless has had nine years in custody without a single disciplinary infraction. And, you know, having represented criminal defendants a long time, that's extraordinary. And behaving in that way in prison requires the same self-control that behaving on the outside requires. It's also the case that he completed more than 4,000 hours of voluntary, self-directed, rehabilitative programming. That he completed two drug treatment programs, and not counted within the 4,000 hours is his participation in Alcoholics Anonymous. We also have testimony from a psychiatrist that's unrebutted that Mr. Lawless's mental health condition is imminently treatable with mood-stabilizing medications. And that these mood-stabilizing medications would also make a relapse of the substance abuse less likely to occur. And considering all the circumstances, and especially Mr. Lawless's own commitment to his rehabilitation, the psychiatrist said that it's extremely unlikely that the circumstances that produced this offense would recur. We also have in mitigation Mr. Lawless's early and sincere expressions of remorse. He admitted to this as soon as he sobered up from the offense, and he's been remorseful throughout. The district court found that he made a sincere and authentic expression of remorse. The final mitigating factor is one that I don't think that you necessarily have to reach. But it's also that he cooperated with the government in 2012. The district court found that there wasn't cooperation. I think that you should find that that was clearly erroneous. But even if you don't reach that, you still have so much mitigation that this upward variance was unreasonable. The sentence is also unreasonable in the sense that it gave unreasonably inadequate weight to the guidelines, and to the necessity of avoiding unwarranted sentencing disparities. Now, this court has said in Lente, which is cited in the government's brief, that when you have a large upward variance, you subject that to careful scrutiny. This court also said in the decision that I cited in my brief, Friedman, that what you're looking for when you see a large variance are genuinely distinguishing factors. And I'm not sure that we have that here. And to the extent that we do, we don't have it to more than doubling the guideline range. We have several bombs that were planted. They were planted in places that where someone could have been hurt. He could have been charged several times and he was not. And the court noted that if he or it came out in the connection with the sentencing hearing that if he had been charged, I think I think there were four bombs. Is that right? There were three public locations and five devices, five devices. OK, so we have five devices. And if he had been able if he had been charged with five devices, if you would just reach the if they had if they had if they had used the statutory, let's say the guideline range and for each one to reach the statutory maximum. Why would that not suggest that this was a reasonable sentence? Because he could have been charged with all of them. So if he had been charged with all of them and if he had pleaded guilty to all of them, you would have gone to the grouping rules in the guidelines and you still would have gotten half of what he got here. So that's that's the problem is, you know, if you're comparing Mr. Lawless to somebody who was charged with and pled guilty to all of them, you go to the 3D 1.4 and you get a couple of extra levels and you still don't get to half of one hundred and forty four months. The district court. So the district court cited that the district court also cited. And I think that your honor mentioned this, that this created a serious risk. And there's no doubt that it did. The problem with relying on that is that the guidelines gave him eight offense levels for creating a substantial risk of death. And so what you have here is you have the district court relying on circumstances that are already covered by the guidelines such that if Mr. Lawless had been in a different district in front of a different judge, you would have gotten 60 months. And this sort of disparity is what the court substantive reasonableness review is designed to ferret out. But I think it's pretty didn't take into account that we're talking about three different places as opposed to one. And with that guidelines enhancement. Right. The grouping rules did. Yes. The grouping rules do. So the trial, what I'm saying is you said that he got an enhancement for substantial or I don't know the exact language, but serious risk of exposure to death or the possibility of risk of death. Eight levels. Is that what you said? OK. Yeah. His base offense level was increased from 16 to 24. OK. Well, that takes into account one bomb, one place. Right. No. The reason being, because if he had been charged with all three, all three, eight, 44 eyes, then all three of those would have been brought up to offense level 24. And then if you do that and you apply the grouping rules in 3D 1.4, you still get half of what the district court did. So, yes, if you account for he's charged and convicted with all of them and each one gets the eight level upward adjustment, you still get half of what the district court did. I think that it's useful to compare this case to the one that I cited in my 28 J letter. Which is the Torres case. In that case, you had a defendant who was placing package bombs and apparently terrified the city of Beaumont. One package bomb was left out on a patio on star at Starbucks, apparently for an unsuspecting person to open and explode on. And then another one was placed outside of a church and did blow up and cause property damage to the church. The defendant in that case, like Mr. Lawless, had a guideline range of 60 to 63 months and he was sentenced to the guidelines. Now that if this defendant in Torres is setting the bombs, expecting that somebody is going to open them up and explode. It seems to me that that involves even more risk than what happened here. And it's definitely strikes me as unreasonable to say that what Mr. Lawless did is more than double is 240% of what Mr. Torres did. I think it's also if you if we agree with you on you've got a number of procedural and reasonableness arguments that are merit perhaps some comment. And if we agreed with you on one of those, we wouldn't reach presumably the substantive issue. We'd simply remand for new sentence. So, um, so I think that the procedural arguments are meritorious. I'm happy to talk about those. However, I do think that you should reach the substantive reasonableness issue regardless. That's what you did in the Morgan case that I believe Judge Holmes, you were on the panel and concurred on that. But the majority said, we say this is procedurally unreasonable. And furthermore, we say it's substantively unreasonable. And I think that's what you should do here. My concern is that, you know, Mr. Lawless is scheduled to be released in less than a year. And that if the court does not reach the substantive reasonableness issue, I'm concerned that he will have to serve out the entirety of this substantively unreasonable sentence before we could get a reasonable sentence imposed. But that being said, I do think that you can reverse on procedural grounds as well. I'm happy to talk about any of those. But if there aren't specific questions on those, I think I'll reserve the remainder of my time for rebuttal. Thank you, counsel. Please proceed. They please the court. I'm Carl Shock representing the United States. The district court in this case sentenced the defendant to 12 years in prison for placing five bombs in three public places, including importantly, and this is a factor that keeps getting lost outside of an occupied hotel over a two night span. The court said explicitly that its sentence was based on the parsimony clause of Section 3553 a in the statutory sentencing factors and that anything less than the sense it gave was not sufficient to satisfy those factors, in particular, the seriousness of the effects. The court considered all of the mitigating factors that the defendant sites on appeal, and it gave a thorough and reasonable explanation for its sentence, which this court held in Cookson is relevant to the substantive reasonableness analysis. And in particular, the court explained that it was doing so in this case because the facts of the case were truly disturbing. This wasn't some momentary lapse. The defendant here researched how to make bombs. He purchased materials online. And after setting off one bomb the first night and setting fire to a bar. He then went back out the very next night and set off for more bombs again including that bomb outside of an occupied hotel where people were sitting on an outdoor patio 15 feet from where it was intended to go off. And when the defendant was arrested, she had more bomb making components in his home in his car. Also, although the defendant didn't have an extensive criminal history. She did have a prior conviction for an explosive device possession or setting off of an explosive device. Remind me please how many did go off just the one. They all went off to very well for went off to varying degrees. I think only one didn't go off at all. The one that was set off in the bar seems to have gone off extensively. The only record we have of the damage that was done is actually in the transcript that's in the supplemental record where the defendants lawyer says that there was $74,000 in damage. The others appear to have barely gone off and the record explains why they didn't. It wasn't because he didn't intend them to. It was because he made various miscalculations about the way that the gas was going to be transferred and the weight of the gas versus the weight of the air. Um, I'd like to address the issue of the weight that the court gave to the guidelines and the prior sentence. The defendant has made this procedural argument that the court relied on the prior sentence. And in order to take that view, we would have to disbelieve what the court said because the court said that it was relying on 3553 a and the sentencing factors. No, but before it said that the court said it was discussing the government's position, basically, and it said that it was going to take it took into consideration, it took into consideration. Before imposing the hundred and 44 months sentence that a sentence of 240 months is the same as the sentence originally agreed to by both the defendant and the government. Now, the court did say nothing factually has changed in terms of the underlying facts of defense offense conduct. But the sentence, the government requested was the same one as originally imposed and that was the government's position that we're we're recommending a sentence, the same one that was originally imposed. This is a sentence he got Judge, you should consider that and the judge said, I'm going to take that into consideration. So, whether he took it into consideration, whether it was in the back of his mind or seems like he was basically conceding. I do think it has some relevance that originally this defendant was got 240 months and then when he says the defendant. He said that you ought to feel Feel good about that because, gee, it's a lot better than what you originally got. It seems like maybe this judge was bit fixated on government's position that, hey, we're just recommending what he originally got But the sentence he originally got turns out to be unconstitutional and why isn't that procedurally problematic. Well, first of all, I'm not sure I'd agree with the way that with your characterization of what the court said what the court said is it was going to summarize the government's arguments, some of which it believes has merit. It then explained as the government had that the government's request was the same as the sentence before I thought it did so in consideration, though. Yeah, it didn't specifically say it took that into consideration. It said that it was taking some of the government's arguments into consideration and then it stated that But ultimately what it was doing is it was using that as a lead into the facts of the case and the disturbing facts of the case, which is ultimately what drove it sentence and I think I understand that. I just think it's problematic that perhaps the court seemed to have that on its mind. And that was the government's position. I think what the court was recommending what it got, even though that was an unconstitutional sentence. Yeah, I think that what the court was agreeing with because if you look at the government sentencing papers, it's reply after the defendant raised this issue. And what the government said is it clarified. No, we are we are seeking the same sentence, but that sentence is because the facts are so severe. And so I think that what the court is saying here when it's talking about the government's argument is it's agreeing with the government. About the facts of this case being extremely severe because it was a direct lead in to its next statement, which is the government argues and I agree that these facts are not these facts are very disturbing. I think it's important to note that when the defendant made the same argument below that he makes now about the government unreasonably relying on the prior sentence. The court actually ruled on that objection and said, I agree that the sentencing analysis must, of course, begin with the guidelines. And so the court was aware that the government or that the defendant was making this objection. And although he began the portion of the ruling on the motion for variance by summarizing what the government had said. Ultimately, when it got to its ruling, it agreed with the defendant's objection. It made clear it was starting with the guidelines. It made clear that it was based in its sentence on the 3553 factors and then it didn't believe that a sentence lesson that would be reasonable. I also think earlier to to consider to ask the court to consider his assistance and cooperation. And then I think the defendant makes a pretty good point about the fact that as to the prior sentence you you use the term that his cooperation had been useful in the past tense. And yet we get to the current sentence and you say, oh, in hindsight, it didn't turn out to be useful at all. I don't, I don't understand that it was useful in the past tense several years ago, but now it's not useful at all. In hindsight. In that sort of inconsistent. It obviously is a different a change in position. So to the extent that that means it's inconsistent. It, it clearly is before the government said that there was substantial assistance now is saying there's not, but I think It said it was significant and useful in the investigation, meaning it had already been useful in the investigation, the government could have conditioned that, but it didn't said it's already been useful. That's a few years ago, and now the government says, Well, no, in hindsight, it wasn't useful. After all, I guess I have a hard time understanding that. Yeah, and I, I think the important thing to remember there is that the sentencing happens at a particular point in time and the sentencing in 2012 happened and the government was required to take a position on substantial assistance at the point in time of that sentencing under the plea agreement, the government had agreed that if you had provided substantial assistance, they would make this motion. And so the government at that point in time, said what it believed to be the case based on the information that had no doubt at least influences a practical matter by the fact that he was facing a 30 year mandatory minimum. Otherwise, but made the record, but, but, but made the representation based on the information it had and at that point, believe that the information you had was useful. Now it turned out that it wasn't, and it turned out, and it wasn't because the government's position changed, it was because it got a more complete picture of the information as it conducted that investigation. And it was now able to look with a more complete picture at the time of 2020 and say you know what, when we believe the defendant about some of the things that he said at the time, ultimately did not bear out. And so yes, the government changed positions, I think that certainly the court could have found otherwise and the court could have held the government to its initial position at the time of 2012. But I do think this is a factual finding it's not one that's clearly erroneous, and it was proper for the district court to defer to the government's current assessment based on the full information. You know what the facts are underlying the change of view of the government. I do. I don't think it's part of the record I can share with you what that is but obviously in the record all that's there is that the, the information proved to self serving to be useful. Oh, um, I'd like to address this issue about the guidelines and what the guidelines would have done for a sentence that for grouping counts and taking everything into consideration. Yes, the guidelines take into account knowingly creating a substantial risk, but that doesn't mean that the court can't vary upward from that, where there's an extraordinary degree of risk. And I do think the thing that the defendant is missing here and ignoring is in particular these bombs outside of an occupied hotel, where people are sitting 15 feet away. And I think that the defendant says something in the briefs about the people weren't there when the bombs went off. But if you look at the PSR what it says, it says witnesses who are sitting on an exterior patio reported that an explosion occurred, followed by a fire 15 feet from where they were sitting. That's all it says I think a fair inference is that they were there when the explosion happened. Now they didn't see the defendant but they were there. Also, the defendant himself said that this bomb outside the hotel didn't explode as he had hoped. Now if a bomb goes off outside of an occupied hotel on it's not just those people who are 15 feet away who knows what would have happened. If this bomb would have gone off as intended. And so again, we don't, the comparison is not somebody who sets off five bonds in completely isolated places with nobody around in the middle of the night as the defendant wants it to be. The comparison is somebody who does all of that, including a bomb that's outside of a hotel. And I would add that, that if somebody had gotten hurt, or if somebody had gotten killed, which the defendant talks about the statutory maximum if somebody had gotten hurt, the statutory maximum would have doubled. If somebody would have gotten killed, the statutory maximum would have gone up to life imprisonment. And there's no doubt, based on the way that this court evaluated this set these facts that the court knows in that situation would have gone even higher. This court said that it has sat on 1000 cases, and it done 1000 sentencing, and it couldn't recall a single case that it had ever had, where somebody put more members of the public at harm than this particular case. Considering risk is one thing, but would it really have been appropriate for the court to say that, you know, if somebody had died, you could have gotten x and therefore I'm going to give you x. Is that really No, that's not what I'm saying that the defendant is trying to say that, well, if somebody would have died, the sentence still would have been even less. And what I'm saying is that's not true. If somebody would have died, I think the sentence would have been even higher. I'm not using that to justify the court sentence. Neither did the court. I'm using it to respond to the government's argument that a more severe crime would have gotten a lesser sentence. And I just think that there would not have been a guideline sentence in that particular situation. Because because the defendant submitted a supplemental authority, the tourist case, I do feel compelled to at least just briefly respond to it. Most obviously, that sentence came four months after lawless was sentenced, so it certainly can't render his sentence substantively unreasonable at the time. But I do want to draw out a couple differences between those cases. First of all, the defendant in that case was criminal history category one apparently no criminal history criminal history. This defendant had a prior explosive device conviction. The defendant in that case, the only bomb that actually exploded was with nobody around this defendant. One exploded with people 15 feet away. And then finally, that defendant placed two bombs and detonated one. The defendant here placed five bombs and successfully detonated four. So so I do think that there are differences in that case. But obviously, coming afterwards, I don't think that it can create that disparity. And then I just want to reference again in response to the long list of mitigating factors. I understand and the court understood that there were many mitigating factors. I am not discounting neither did the court, the mental history, the mental health challenges that this defendant had. The court went through all of those. The court found this to be a very difficult case. If you look, I think the court said that for the rest of its the rest of the court's career, he's going to describe this as what makes his job so hard. So this isn't this isn't a situation where he blew off those mitigating factors. He considered them. He said there were significant aggravating factors, significant mitigating factors. And the court walked through all of them and ultimately came to the conclusion that the appropriate sentence was 144 months. I don't think that given that thorough explanation and given all of the things that we've talked about today, that that decision exceeded the bounds of permissible choice. Now, could the court have reached a lower sentence? Certainly. And perhaps another court would. But that's not the question. There's a range of possible sentences. And the sentence here, 12 years for setting off five bombs in three places over two nights, including outside of a hotel for a defendant who already had an explosive device conviction, is a substantively reasonable sentence. It's within the realm of possible choices. And unless the court has any further questions, the government requests that Lawless's sentence be affirmed. Thank you, counsel. And I believe you are out of time, Casey. Oh, do you have? Oh, I'm sorry. You do have time. I wasn't trying to get rid of you. I apologize. Go ahead. So I want to touch on start with the last point that Mr. Shock mentioned, and that is that, you know, that the judge really did think about this mitigating evidence. And I think that that's true, but that just shows that he dealt with it procedurally. What this court has to ask is, was it reasonable as a substantive matter to impose this much imprisonment in the face of those mitigating factors? And I think the answer is no. What do you do with the fact that the court did make a finding that in all likelihood, Mr. Lawless intended to cause death or serious bodily injury in his selection of the targets for his multiple bombs? I mean, again, we weren't here to determine whether I would impose that sentence, whether you would have imposed that sentence. The question is whether it could be deemed reasonable. And if that finding is not clearly erroneous, and I know that was contested at the sentencing, if that finding is not clearly erroneous, then why isn't that within the range of reason to say this guy needs some serious time? That finding is clearly erroneous, that he intended to do it or that he intended to maximize the risk. And I want to talk about this hotel incident that Mr. Shock spoke a lot about. I think Mr. Shock said that on the one hand, there's risk, but then there's risk. But you really have to look at what this device was. This was a plastic bottle with some gunpowder inside. This is not something that's going to take down a hotel. It's not something to where even someone 15 feet away is going to be harmed by the explosion. Now, it caused a fire, and that's dangerous. I'm pretty sure that if you take a Molotov cocktail and throw it at a building, and that building is still standing, you're looking at a 30-year mandatory minimum. I mean, so what does that tell us? I mean, all right, fine, you used a bottle. I mean, so what? I mean, so it still could have hurt people, and it still could have caused a panic that resulted in people being hurt. It certainly could have, and that's why he got the eight-level increase that I'm speaking about. The question, I think, is if you take the category of offenses where, all right, let's think about all the offenses where the defendant substantially risked causing death to other people. If you limit yourself to that category of offenses, was this offense so outrageous in comparison to the other substantial risk of death offenses that it requires a 140% upward variance? And I just don't see how you get there. It was risky for sure, but that much more risky than other offenses that cause a substantial risk of death? I don't see it. Now, I want to talk a little bit about this considering the prior sentence, the 20-year prior sentence. And I just want to, this is one of our procedural reasonableness challenges, quote what the district court said. He said, let me recap some of the arguments of the government, which I believe have merit, and that I have taken into consideration in deciding the sentence to impose. And then the next thing he talks about is how important this prior sentence is. So he didn't say some of the government's arguments have merit. He said, I'm about to tell you which ones I think have merit and which ones I've taken into consideration. And the first one he mentions is that the substantial importance of this prior sentence, which that makes the sentence procedurally unreasonable, if not substantively unreasonable. Thank you. Thank you, counsel. Case is submitted.